MEEKS ET AL., APPELLANTS, *v.*
PAPADOPULOS, SHERIFF, ET AL., APPELLEES.
ALDERUCCI ET AL., APPELLEES, *v.*
STOKES, SHERIFF, ET AL., APPELLANTS.

[Cite as Meeks v. Papadopulos (1980), 62 Ohio St. 2d 187.]

(Nos. 79-1294, 79-1299 and 79-1308—
Decided May 14, 1980.)

188

*Messrs. Procario, Anthony & Young, Mr. Gary J. Procario, Messrs. Cross & Rose* and *Mr. Richard S. Dodson, Jr.,* for appellants in case Nos. 79-1294 and 79-1308.

*Mr. James R. Unger,* prosecuting attorney, and *Mr. Loren E. Souers, Jr.,* for appellees in case Nos. 79-1294 and 79-1308.

*Messrs. Brannon & Cox* and *Mr. Dwight D. Brannon,* for amicus curiae Ohio Fraternal Order of Police in case Nos. 79-1294 and 79-1308.

*Messrs. Sirkin, Pinales & Schwartz, Mr. H. Louis Sirkin* and *Mr. Howard M. Schwartz,* for appellees in case No. 79-1299.

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. James W. Harper,* for appellants in case No. 79-1299.

HERBERT, J. The fundamental issue presented by this cause is the extent to which a member of a police or fire protection agency who works for an employer[2] in this state is entitled to overtime compensation under R. C. 4111.03 of the Ohio Minimum Fair Wage Standards Act. It is argued that the General Assembly did not intend, under R. C. 4111.01(E)(7),[3] to exclude all members of police and fire protection agencies from the overtime compensation provisions of R. C. 4111.03. Instead, it is contended that the statute excludes only members of police or fire protection agencies employed on a part time or seasonal basis. Appellants in case Nos. 79-1294 and 79-1308 urge that to exclude all members of police or fire protection agencies from the statutory overtime compensation would constitute a denial of their property rights in violation of due process, and would deprive them of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

---

[2] R. C. 4111.01(D) provided, in applicable part:

" 'Employer' means the state of Ohio, its instrumentalities, and its political subdivisions and their instrumentalities, any individual, partnership, association, corporation, business trust, or any person or group of persons, acting in the interest of an employer in relation to an employee, but does not include an employer whose annual gross volume of sales made for business done is less than ninety-five thousand dollars, exclusive of excise taxes at the retail level which are separately stated.***"

[3] R. C. 4111.01, in part, provides:

"(E) 'Employee' means any individual employed by an employer but does not include:
"***

"(7) A member of a police or fire protection agency or student employed on a part-time or seasonal basis by a political subdivision of this state."

In *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 55 N.E. 2d 413, paragraph five of the syllabus states that, "[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for***[resort] to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." The same principle was expressed in a different manner in *Carmelite Sisters, St. Rita's Home,* v. *Bd. of Review* (1969), 18 Ohio St. 2d 41, 247 N.E. 2d 477, where this court indicated, at page 46, that "***legislative intent may be inquired into only if the enactment is ambiguous upon its face." Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent. *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16, 242 N.E. 2d 342; *Carter* v. *Youngstown* (1946), 146 Ohio St. 203, 65 N.E. 2d 63; *Commercial Credit Co. v. Schreyer* (1929), 120 Ohio St. 568, 166 N.E. 808.

The disagreement among the trial and appellate courts below, and others,[4] indicates strongly that R. C. 4111.01(E)(7) is ambiguous. Our perusal of the briefs and arguments herein brings us to that conclusion.

In adopting rules of statutory construction formulated by the judiciary, the General Assembly has enacted R. C. 1.49:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

---

[4] In an opinion filed July 9, 1979, the Court of Common Pleas of Miami County found, in case No. 79-22, *Miami Sheriff et al.,* v. *Miami County Bd. of County Comm. et al.,* that R. C. 4111.01(E) was ambiguous.

The Court of Common Pleas of Montgomery County, in *Fraternal Order of Police et al.,* v. *Keiter et al.,* case No. 76-1876, decided June 30, 1978, found that the nature of a sheriff's discretion under various other sections of the Revised Code, rather than under R. C. 4111.01(E)(7), required the exclusion of deputies from the overtime compensation provisions of R. C. 4111.03.

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

Appellees in case Nos. 79-1294 and 79-1308 have proffered for the record certified copies of the Ohio Legislative Service Commission's analysis of Sub. H. B. No. 201, R. C. 4111.01 *et seq.*, during the time it was introduced, voted upon, and passed by the Ohio Senate and House of Representatives. Although this court is not bound by such analyses, we may refer to them when we find them helpful and objective. This legislative history indicates that the commission, in analyzing the bill and explicating the classes of employers or employees to be exempted from the operation of R. C. 4111.01 *et seq.*, informed the members of the General Assembly that Sub. H. B. No. 201 excluded "public employers of police and fire protection personnel***." To the same effect is the 1973-74 Legislative Service Commission's Summary of Legislative Enactments.[5] See *ITT Canteen Corp.* v. *Porterfield* (1972), 30 Ohio St. 2d 155, 158, 283 N.E. 2d 124; *Weiss* v. *Porterfield* (1971), 27 Ohio St. 2d 117, 120, 271 N.E. 2d 792. "[S]tatutes are to be read in the light of attendant circumstances and conditions, and are to be construed as they were intended to be understood, when they were passed." *Miller* v. *Fairley* (1943), 141 Ohio St. 327, 48 N.E. 2d 217, paragraph two of the syllabus.

In *State, ex rel. Pratt,* v. *Weygandt* (1956), 164 Ohio St. 463, 466, 132 N.E. 2d 191, it was stated that "***statutes relating to the same matter or subject, although passed at different times and making no reference to each other, are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent. 37 Ohio Jurisprudence 599, Section 332; *Thoman* v. *Farmers & Bankers Life Ins. Co.,* 155 Kan. 806, 130 P. 2d 551; *State, ex rel. Carlton,* v. *Weed,* 208 Minn. 342, 294 N.W. 370." The basis for this rule is that the General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the

---

[5] Under the chapter entitled Industry-Commerce-Labor, the 1973-1974 Summary of Enactments provides, under Am. Sub. H. B. No. 201, that the "[a]ct exempts the following classes of employers and employees from coverage: ***public employers of policemen and firefighters; public employers of part-time or seasonal help.***"

subject matter of the enactment even if they are found in separate sections of the Code. See *State, ex rel. Darby,* v. *Hadaway* (1925), 113 Ohio St. 658-659, 150 N.E. 36. It is accepted that in arriving at legislative intent, such related provisions should be reconciled with the enactments in question, if possible. *Trotwood Trailers, Inc.,* v. *Evatt* (1943), 142 Ohio St. 197, 51 N.E. 2d 645; *State, ex rel. O'Neil,* v. *Griffith* (1940), 136 Ohio St. 526, 27 N.E. 2d 142.

That the General Assembly intended to exclude all police and fire personnel from the operation of R. C. 4111.01(E)(7) is borne out by the conflict which would otherwise emerge between R. C. 4111.03 and statutes in effect at the time of the adoption of the Ohio Minimum Fair Wage Standards Act. Under R. C. 4111.03, compensation for "employees," as defined by R. C. 4111.01(E)(7), is fixed at one and one-half times the normal wage rate for hours worked by that "employee" in excess of 40 hours in one work week. Although the word "week" is not defined by the Ohio Minimum Fair Wage Standards Act, R. C. 1.44(A) provides that " '[w]eek' means seven consecutive days." Thus, a "work week" under R. C. 4111.03 apparently consists of 40 hours of work in 7 consecutive days. However, under R. C. 737.07[6] a work week is expressly defined to mean work not in excess of 44 hours. A similar inconsistency is evident when R. C. 4111.03 is read *in pari materia* with R. C. 4115.02[7] which sets out detailed and comprehensive

[6] R. C. 737.07 provides:

"In each city, except in case of necessary appearances in court and emergency special duty assignments, not to exceed eight hours constitutes a day's work and not to exceed forty-four hours constitutes a week's work for policemen. Annually, in each city, each policeman shall be given not less than two weeks' leave of absence with full pay."

[7] R. C. 4115.02 states, in part:

"The chief of the fire department of each municipal corporation, township, or fire district employing three or more full-time paid firemen, unless exempt under this section, shall divide the uniform force into not less than two platoons, and where the uniform force is so divided into two platoons the said chief shall keep a platoon of the uniform force on duty twenty-four consecutive hours, after which the platoon serving twenty-four hours shall be allowed to remain off duty for at least twenty-four consecutive hours, except in cases of extraordinary emergency. Each individual member of the platoons in addition to receiving a minimum of twenty-four hours off duty in each period of forty-eight hours shall receive an additional period of twenty-four consecutive hours off duty in each period of eight days so that *no individual member shall*

work standards for firemen employed by a municipal corporation, township, or fire district. Finally, we note that a construction of R. C. 4111.01(E)(7) which would mandate the payment of overtime compensation under R. C. 4111.03 to deputy sheriffs would be inconsistent with discretion afforded sheriffs under R. C. 325.17 to "fix the compensation" of their deputies.[8]

In our view, a construction of R. C. 4111.01(E)(7) which denies the statutory overtime to appellants in case Nos. 79-1294 and 79-1308 does not unconstitutionally deprive them of their property rights in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution. Appellants have not demonstrated that they have been deprived of a "property" interest which is protected by procedural due process. See *Bd. of Regents* v. *Roth* (1972), 408 U. S. 564.

Furthermore, we cannot accept appellants' contention that the exclusion of police and fire personnel from the operation of R. C. 4111.03 violates the Equal Protection Clause. In *State, ex rel. Soller,* v. *West Muskingum Bd. of Edn.* (1972), 29 Ohio St. 2d 148, 280 N.E. 2d 382, it is stated, at page 151: "***The constitutional guarantee of equal protection of the laws does not dispense with the right and power of the General Assembly to differentiate within reasonable limitations, and if a classification has a reasonable basis it is not rendered invalid because it does not affect all in an identical manner." The classification of police and fire personnel has long been

---

*be on duty more than a total of seventy-two hours in any period of eight days.* The chief shall arrange the schedule of working hours to comply with this section. The chief may, however, in cases of sickness, death, or on other necessary occasions, permit the exchange of working hours between members of the department.***" (Emphasis added.)

[8] R. C. 325.17, in part, provides:

"The officers mentioned in section 325.27 of the Revised Code may appoint and employ the necessary deputies, assistants, clerks, bookkeepers, or other employees for their respective offices, fix the compensation of such employees and discharge them, and shall file certificates of such action with the county auditor. Such compensation shall not exceed, in the aggregate, for each office, the amount fixed by the board of county commissioners for such office. When so fixed, the compensation of each such deputy, assistant, bookkeeper, clerk and other employee shall be paid biweekly from the county treasury, upon the warrant of the auditor.***"

194

recognized as constitutionally appropriate due to the special function these individuals perform in safeguarding our communities. See *Kelley* v. *Johnson* (1976), 425 U. S. 238; *Massachusetts Bd. of Retirement* v. *Murgia* (1976), 427 U. S. 307. A rational basis for legislative differentiation of police and fire personnel under the Ohio Minimum Fair Wage Standards Act is that the responsibilities of these public employees, unlike their counterparts, have no temporal parameters and pose specialized scheduling considerations for their employers. See, *e.g.*, R. C. 737.07; 4115.02.

Accordingly, it is our conclusion that R. C. 4111.03 of the Ohio Minimum Fair Wage Standards Act does not require the payment of overtime compensation to any member of a police or fire protection agency working for an employer defined in R. C. 4111.01(D), as such persons were not intended by the General Assembly to be employees within the meaning of R. C. 4111.01(E)(7).

In case No. 79-1299, appellants contend that R. C. 4111.01(E)(7) excludes deputy sheriffs from the definition of the term "employee" as used in R. C. 4111.01 *et seq.*, and for that reason deputy sheriffs are not employees entitled to the payment of overtime pursuant to the provisions of R. C. 4111.03. Based upon the foregoing, we agree.

The judgment of the Court of Appeals in case Nos. 79-1294 and 79-1308 is affirmed, and that of the Court of Appeals in case No. 79-1299 is reversed.

*Judgment affirmed in case Nos. 79-1294 and 79-1308.*
*Judgment reversed in case No. 79-1299.*

CELEBREZZE, C. J., W. BROWN, KERNS, SWEENEY, LOCHER and HOLMES, JJ., concur.

KERNS, J., of the Second Appellate District, sitting for P. BROWN, J.