Kennedy, J.,
concurring in judgment only.
{¶ 24} I concur only in the judgment of the lead opinion today because I must.
{¶ 25} “Where a statute is found to be subject to various interpretations, * * * a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent.” Meeks v. Papadopulos, 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980). “The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the lawmaking body which enacted it.” Slingluff v. Weaver, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus.
{¶26} However, the intent of the General Assembly must be determined primarily from the language of the statute itself. Stewart v. Trumbull Cty. Bd. of Elections, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). If the statute is ambiguous, the court “may” consider the “matters” listed in R.C. 1.49 to identify the legislature’s intent: the object that the legislature sought to attain, the circumstances surrounding the law’s enactment, legislative history, preceding law, the consequences of constructing the law in a certain way, and the statute’s administrative construction. Id.
{¶ 27} Through enactment of R.C. 2925.11(A), the General Assembly set forth a general provision that no person shall “knowingly obtain, possess, or use a controlled substance or a controlled substance analog.” Thereafter, the legislature enacted specific prohibitions based on the class and amount of a controlled substance or controlled-substance analog in the offender’s possession. See R.C. 2925.11(C).
*270 {¶ 28} At issue here is R.C. 2925.11(C)(4), which provides, “If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine.” The General Assembly also enacted specific penalty provisions related to the possession of cocaine which, depending on the weight of the drug involved, categorized possession into classifications by a degree of felony. See R.C. 2925.11(C)(4)(b) through (f).
{¶ 29} I disagree with the conclusions of the lead opinion and the dissent that the language of the statute is unambiguous. When the language of the specific prohibition by class of controlled substance is read in conjunction with the corresponding penalty provision, the statute is ambiguous. See Symmes Twp. Bd. of Trustees v. Smyth, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000) (conflict among the appellate courts regarding the meaning of statutory phrase suggests that the language is ambiguous). The specific penalty provision uses the phrase “grams of cocaine.” R.C. 2925.11(C)(4)(b) through (f). As noted in the lead opinion, the definition of “cocaine” does not include a mixture of the drug. Lead opinion at ¶ 15. See R.C. 2925.01(X). Therefore, if the General Assembly had intended to classify possession by degree of felony to include the “compound, mixture, preparation, or substance containing cocaine,” then it could have easily included that language in the provision or changed the definition of “cocaine” to include this language. However, the legislature did not. The General Assembly limited the classification by degree of felony to “grams of cocaine” only.
{¶ 30} The state of Ohio argues that “the drafters made a probable slight faux pas” in amending this provision, and “reading the statute in any * * * way” other than that the General Assembly requires a mere “aggregate weight” test “belies the legislative intent of the law.”
{¶ 31} When a statute is ambiguous, R.C. 1.49 allows us to consider other matters to determine the intention of the General Assembly, including legislative history. “Although this court is not bound by” the analyses prepared by the Ohio Legislative Service Commission, “we may refer to them when we find them helpful and objective.” Meeks, 62 Ohio St.2d at 191, 404 N.E.2d 159.
{¶ 32} The Ohio Legislative Service Commission recognized that one aspect of 2011 Am.Sub.H.B. No. 86 (“H.B. 86”) was to eliminate “the distinction between the criminal penalties provided for drug offenses involving crack cocaine and * * * powder cocaine,” but a second aspect of the law was to remove the presumption of a term of incarceration for fourth-degree felony drug offenses. Ohio Legislative Service Commission, Bill Analysis, Am.Sub.H.B. 86, as passed by the General Assembly, at 9.
{¶ 33} Heralded as a significant piece of legislation that would drastically reduce prison population by ensuring that low-level nonviolent drug offenders *271 would not be subjected to mandatory prison terms, the director of the Department of Rehabilitation and Correction called H.B. 86 “a day of hope.” Johnson, Law to Cut Prison Population, Columbus Dispatch (June 30, 2011) IB.
{¶ 34} In achieving this reduced prison population by eliminating presumptive prison sentences for some nonviolent drug offenders, the requirement that prosecutors prove the “grams of cocaine” signals the legislature’s intention: only drug offenders possessing the specific grams of pure cocaine identified in R.C. 2925.11(C)(4) were eligible for incarceration, not drug offenders whose product had a detectable amount. Compare State v. Chandler, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, syllabus.
{¶ 35} The General Assembly specifically used the language “grams of cocaine” without any further qualifiers. If the General Assembly had intended to include the “compound, mixture, preparation, or substance containing cocaine,” R.C. 2925.11(C)(4), into the weight threshold for punishing possession of cocaine, then the General Assembly has the opportunity to specify a different remedy or change the definition of “cocaine” to include this language. “It is not the role of the courts ‘to establish legislative policies or to second-guess the General Assembly’s policy choices.’” Stetter v. R.J. Corman Derailment Servs., L.L.C., 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting Groch v. Gen. Motors Corp., 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212. “[0]ur role, as members of the judiciary, requires fidelity to'the separation-of-powers doctrine.” State v. South, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 28 (O’Connor, C.J., concurring). “[W]e must respect that the people of Ohio conferred the authority to legislate solely on the General Assembly.” Id., citing Sandusky City Bank v. Wilbor, 7 Ohio St. 481, 487-488 (1857), and Article II, Section 1, Ohio Constitution.
{¶ 36} Therefore, I concur in judgment only.