This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-plaintiff Communication Workers of America Local #4546 ("the Union") appeals from an order of the Summit County Court of Common Pleas affirming an arbitration award in favor of appellee-defendant Summit County Children Services Board ("CSB"). This Court affirms.
CSB is a county agency that provides care for abused and neglected children. The Union represents CSB employees. As part of a collective bargaining agreement reached between the two parties, a health care coverage program was implemented in April 1996 in which CSB employees would contribute ten percent toward the cost of the premium for insurance and CSB would provide coverage for the employee. However, not all employees chose to participate in this system, and on June 3, 1996, the Union filed a grievance. At issue was whether CSB had violated their labor agreement with the Union by allowing CSB employees to opt out of the health care coverage provided pursuant to the collective bargaining agreement. The Union alleged that the collective bargaining agreement mandates coverage for all employees, while CSB contended that it had fulfilled its contractual obligation by providing health care coverage to those employees who had chosen to participate in the plan. The collective bargaining agreement was silent regarding the issue of opting out. CSB further argued that R.C. 4113.15, which CSB claims prohibits employers from making deductions for fringe benefits without the prior written authorization of an employee, supported the argument that employees could opt out of health care coverage.
In accordance with the collective bargaining agreement, the matter proceeded to arbitration. A hearing was held in April 1997. The arbitrator thereafter denied the grievance in an opinion issued on August 4, 1997. In support of her decision, the arbitrator cited R.C. 4113.15 and, believing the statute applicable, stated that if she were to grant the grievance, it "would be limiting or interfering with the duties and responsibilities of [CSB] under applicable law, and this is prohibited under Section 504.08[(B)]" of the collective bargaining agreement. Therefore, the arbitrator reasoned, the collective bargaining agreement cannot be read or interpreted to mean that [CSB] has the authority to make payroll deductions for health care coverage without written authorization from the employee. The Arbitrator has no authority to require [CSB] to act contrary to Ohio law even though the contract references an agreement for employee contributions.
Further, the arbitrator found that the language of the agreement itself indicated that "there is no contractual prohibition on opting out of health care coverage; similarly, there is no provision mandating participation." The arbitrator also found that while the history of the parties did not rise to the level of a past practice of allowing employees to opt out, the Union was held to have "acquiesced or tacitly acknowledged this option over a substantial time period." In fact, the arbitrator found that neither prohibiting employees from opting out nor requiring all employees to participate in the coverage had even been a subject of negotiation.
On October 2, 1997, the Union moved the court of common pleas to vacate the arbitration award pursuant to R.C. 2711.10(D). The Union argued that: (1) the award impermissibly departed from the essence of the collective bargaining agreement; (2) the arbitrator failed to recognize that R.C. 4113.15 did not apply, thereby corrupting the validity of the arbitrator's interpretation of the agreement; and (3) the arbitrator exceeded her authority in violation of the jurisdictional restriction placed on her by the collective bargaining agreement. A hearing was held, and the trial court denied the Union's motion on May 21, 1998. In finding that the arbitrator had reached a reasoned conclusion, the trial court explained:
 In the matter at hand, the arbitrator's interpretation and holding is both reasonable and consistent with the [collective bargaining agreement]. To provide coverage is to make coverage available to all employees. Provision of coverage to all employees does not mean that all employees must accept coverage. The arbitrator correctly based her conclusions on the past practices of the parties and the interpretation of the contract as a whole.
Regarding the Union's argument that the arbitrator's utilization of an inapplicable statute destroyed the validity of the award, the trial court stated:
 According to [the Union], the arbitrator exercised a manifest disregard for the law by citing R.C. 4113.15
in support of her decision. * * * Although incorrect, the arbitrator's utilization of R.C. 4113.15 is not fatal to her entire ruling.
 The [Union's] argument, based on manifest disregard for the law, fails. First, because the arbitrator relied on a variety of factors (including the prior conduct of the parties and the language of the agreement), the [Union's] argument fails. In addition, although incorrect, utilization of R.C. 4113.15 does not rise to the level of manifest disregard of the law.
The Union timely appeals, asserting two assignments of error.
 Assignment of Error No. I
The Summit County Court of Common Pleas committed reversible error when it failed to vacate the August 4, 1997, [sic] Opinion and Award of Arbitrator Dileone Klein since said Award was a manifest disregard of the law.
The Union contends in its first assignment of error that the trial court failed to find that the arbitrator incorrectly applied R.C. 4113.15. As a result, the Union argues, the arbitrator modified the terms of the collective bargaining agreement to make them mesh with an inapplicable statute, which in turn violated Section 504.08 of the collective bargaining agreement.[1]
Consequently, the Union contends that the court of common pleas should have vacated the arbitration award pursuant to R.C.2711.10(D). This Court disagrees.
The trial court also rejected this argument while agreeing that R.C. 4113.15 should not have been applied.[2] This Court finds that the possible misapplication of R.C. 4113.15 does not render the arbitrator's decision and the trial court's subsequent affirmance of that decision invalid. As this Court has previously explained, a "[m]ere error in the interpretation or application of the law will not suffice [to vacate an arbitration award]. The arbitrators' decision must `fly in the face of clearly established legal precedent' to support a vacation of the award." AutomatedTracking Systems, Inc. v. Great American Ins. Co. (Oct. 14, 1998), Summit App. No. 18906, unreported, quoting Merrill Lynch, Pierce,Fenner Smith, Inc. v. Jaros (C.A. 6, 1995), 70 F.3d 418, 421. Such an arbitral error must rise to the level of a manifest disregard of the law to justify vacation. Id.
This is not a case in which the arbitrator's decision was predicated solely upon the misapplication of an irrelevant statute; rather, the arbitrator regarded the perceived influence of the statute as but one factor in making a decision that drew upon several distinct bases. In addition to the statute, the arbitrator cited in her decision the Union's past acquiescence to permitting employees to opt out of coverage and, most notably, the language of the agreement itself. Although one aspect of the reasoning employed was less than fully realized, the arbitrator's decision when viewed in its totality did not amount to such an egregious assault upon legal precedent so that it can be said to have manifestly disregarded the law. See Merrill Lynch, Pierce,Fenner Smith, supra, at 421 (stating that "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed" and that "even a misapplication of well[-]defined and explicit legal principles does not constitute manifest disregard").
Finally, the Union also argues that even if this Court were to find R.C. 4113.15 applicable in the instant matter, CSB should still lose based upon Cincinnati v. Ohio Council 8, American Fedn.of State, Cty., Mun. Emp. (1991), 61 Ohio St.3d 658, wherein the Supreme Court of Ohio held that "[t]he provisions of a collective bargaining agreement entered into pursuant to R.C. Chapter 4117 prevail over conflicting laws * * * except for those laws specifically exempted by R.C. 4117.10(A)." Id. at paragraph one of the syllabus. R.C. 4117.10(A) does not specifically exempt R.C. 4113.15. Therefore, the parties' collective bargaining agreement prevails over R.C. 4113.15 in instances of conflict. Any misapplication of R.C. 4113.15 by the arbitrator was harmless error, then, so long as the essence of the arbitrator's decision was derived from the terms of the collective bargaining agreement — a basis that the Union challenges in its second assignment of error.
 Assignment of Error No. II
The Summit County Court of Common Pleas committed reversible error when it failed to vacate the August 4, 1997, [sic] Opinion and Award of Arbitrator Dileone Klein since said Award conflicted with express terms of the Parties' Agreement.
In its second assignment of error, the Union avers that the arbitrator's decision conflicts with the express terms of the parties' agreement; therefore, the Union argues, the decision departed from the essence of the collective bargaining agreement and the trial court should have vacated the decision pursuant to R.C. 2711.10(D). This Court disagrees.
The Supreme Court of Ohio has explained that "[a]n arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Mahoning Cty. Bd. of Mental Retardation v. MahoningCty. TMR Edn. Assn. (1986), 22 Ohio St.3d 80, 84. Further, "[o]nce it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C.2711.10(D) is at an end." Findlay City School Dist. Bd. of Edn.v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 132-133.
In the instant case, the disputed collective bargaining agreement language is contained in Section 601.07, which provides:
 The Employer shall provide a Group Health Insurance Plan and Prescription Card coverage for all full-time employees. The benefit level provided by the Employer at the time of the signing of this Agreement shall be retained, and all increases in premiums for said benefits shall be borne by the Employer. Effective April 1, 1996, all Bargaining Unit employees shall contribute ten percent (10%) of the total monthly premium costs for either Single or Family coverage for the remainder of the term of the collective bargaining Agreement. Insurance coverage shall take effect ninety (90) days after initial hire date for a permanent full-time position. For purposes of this Section, full-time employees means an employee who works a scheduled work week of at least thirty-two (32) hours.
The arbitrator found that the language employed did not mandate participation by all CSB employees, but instead mandated that coverage be made available. The court of common pleas was bound to review the arbitration decision under the standard set forth in R.C. 2711.10, which provides:
 In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
* * *
 (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
In addressing a challenge to an arbitration award under R.C.2711.10(D), this Court has previously recognized our limited role in determining whether a rational nexus exists between the agreement at issue and the decision reached:
 "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather then [sic] by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. * * * As the [United States Supreme] Court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."
(Emphasis added.) Summit Cty. Bd. of Mental Retardation Developmental Disabilities v. Am. Fedn. of State, Cty. Mun. Emp.
(1988), 39 Ohio App.3d 175, 176, quoting United PaperworkersInternatl. Union, AFL-CIO v. Misco, Inc. (1987), 484 U.S. 29,37-38, 98 L.Ed.2d 286, 299.
Although the arbitrator could have interpreted the language used in Section 601.07 differently, it is not within this Court's province to substitute our judgment for the judgment of the arbitrator. See Endicott v. Johrendt (Apr. 30, 1998), Franklin App. No. 97APE08-1122, unreported ("Appellate review of arbitration awards is confined to an evaluation of the order issued by the common pleas court pursuant to R.C. Chapter 2711. * * * Thus, [an appellate court] may not review the merits * * *."). Where, as here, there is a rational nexus between the decision reached and collective bargaining agreement language subject to varied interpretation, no departure from the essence of the collective bargaining agreement has occurred and this Court's previous reasoning as set forth in Lorain v. United Steelworkers,supra, applies:
 [The parties] included a provision for binding arbitration in their collective bargaining agreement and, therefore, agreed to be bound by the arbitrator's interpretation of the collective bargaining agreement.
 The arbitrator's award in this case drew its essence from the collective bargaining agreement. Further, it was not arbitrary, capricious, or unlawful. It was supported by an explanation of the reasoning that led to it; an explanation based upon the language of the collective bargaining agreement.
The Union and CSB agreed to have the arbitrator determine the meaning of the disputed collective bargaining agreement language. Absent arbitrary, capricious, or unlawful action, the arbitrator's interpretation of that language is binding, then, because this Court is precluded from engaging in a new review of the merits. Accordingly, the Union's assignments of error are overruled and the judgment of the court of common pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
FOR THE COURT
SLABY, P. J.
CONCURS
[1] Section 504.08(B) provides that an arbitrator may not modify or vary the terms of the agreement.
[2] The trial court noted that one appellate court has found that R.C. 4113.15 does not apply to public entities. SeeGroveport Madison Local Edn. Ass. v. Groveport Madison Local Bd.of Edn. (1991), 72 Ohio App.3d 394, 397.